UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
DERRICK TEAQUE,

                   Petitioner,

           - against -

SUPERINTENDENT, Collins Correctional
Facility,

                  Respondent.
-------------------------------------------------------x

**MEMORANDUM & ORDER**

20-CV-1116 (PKC)

PAMELA K. CHEN, United States District Judge:

Petitioner Derrick Teaque ("Petitioner"), appearing pro se,[1] petitions this Court for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his conviction for Assault in the First Degree, N.Y. Penal Law § 120.10[3], for which he was sentenced to a term of seven years' imprisonment.  For the reasons below, the petition is denied.

## BACKGROUND

I.    **Facts**[2]

On July 17, 2015, Petitioner injured his infant child when he picked up the child, shook the child several times, and dropped the child forcibly into a swing, which caught and injured the child's leg.  (Psychiatric Examination Report ("Psych. Exam. Report"), Dkt. 11-2, at ECF[3] 11;

---

[1] Because Petitioner is *pro se*, the Court liberally construes his petition and interprets it "to raise the strongest arguments that [it] suggest[s]." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (citation and emphasis omitted).  But the Court notes that it "need not act as an advocate for" Petitioner.  *Curry v. Kerik*, 163 F. Supp. 2d 232, 235 (S.D.N.Y. 2001) (quoting *Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1998)).

[2] The Court presumes the "determination of [] factual issue[s] made by [the] State court . . . to be correct" unless rebutted "by clear and convincing evidence."  *See* 28 U.S.C. § 2254(e)(1).

[3] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

Petitioner's Pro Se Supplemental Brief to the Appellate Division ("Pet. Suppl. Br. App. Div."), Dkt. 11-3, at ECF 35.) The child's mother took the child to the hospital for medical treatment two days after the injury. (Pet. Suppl. Br., Dkt. 11-3, at ECF 35.) Petitioner informed the police that he had injured the child and failed to get him medical treatment afterward. (Psych. Exam. Report, Dkt. 11-2, at ECF 11.) The child, who was two and a half months old at the time, suffered brain-damage-induced seizures and received treatment for injuries to the head, brain, eyes, and right leg, including skull, femur, and rib fractures. (*Id.*; Respondent's Affidavit ("Resp. Aff."), Dkt. 11, ¶ 4.)

On July 24, 2015, a Kings County grand jury indicted Petitioner, charging him with one count of Assault in the First Degree (N.Y. Penal Law § 120.10[3]), two counts of Reckless Assault of a Child (N.Y. Penal Law § 120.02[1]), six counts of Assault in the Second Degree (N.Y. Penal Law § 120.05[1], [8], [9]), and one count of Endangering the Welfare of a Child (N.Y. Penal Law § 260.10[1]). (Resp. Aff., Dkt. 11, ¶ 5; *see also* Respondent's Supplemental Brief to the Appellate Division ("Resp. Suppl. Br. App. Div."), Dkt. 11-3, at ECF 46.) Petitioner did not testify at the grand jury proceedings. (Petitioner's Habeas Petition Attachment ("Pet. Habeas Petit. Attach."), Dkt. 1-2, at ECF 1–2.)

## II.    Prior Convictions

At the time of his conviction in this case, Petitioner had no previous felony convictions and was therefore a first-time felony offender. (Petitioner's Brief to the Appellate Division ("Pet. Br. App. Div."), Dkt. 11-3, at ECF 7.) As such, Petitioner's charges exposed him to a potential prison sentence ranging from five to 25 years. (Respondent's Memorandum of Law in Opposition to Petition for Writ of Habeas Corpus ("Resp. Mem."), Dkt. 11, at ECF 27 (citing N.Y. Penal Law § 70.02(3)(a)).)

## III.    State Court Proceedings

Petitioner's defense counsel, Attorney James Pepe, was concerned about Petitioner's disruptive, confused, bizarre, and suicidal behavior and requested a psychiatric examination under New York Criminal Procedure Law § 730 to ensure that Petitioner was competent to stand trial.[4] (Order for 730 Psychiatric Examination, Dkt. 11-2, at ECF 3, 5.)  On March 29, 2016, the Hon. Miriam Cyrulnik of the New York State Supreme Court, Kings County, ordered Petitioner to undergo a psychiatric examination.  (*Id.* at ECF 2–3.)  Steven Rubel, M.D., and Claude Patrice Francois, Psy.D, completed Petitioner's examination on April 25, 2016, and found him fit to stand trial.  (Psych. Exam. Report, Dkt. 11-2, at ECF 8–13.)  Drs. Rubel and Francois saw no evidence of psychosis or confusion and found that Petitioner adequately understood the proceedings and could participate in his defense.  (*Id.* at ECF 7, 10, 12–13.)  Both concluded that if Petitioner's "symptoms of depression and anxiety should worsen, he may be at risk of becoming unfit."  (*Id.* at ECF 10; *see also id.* at ECF 13.)

The People offered Petitioner a plea deal of Assault in the First Degree with a 10-year period of incarceration followed by five years of post-release supervision.  (Petitioner's Plea Transcript ("Plea Tr."), Dkt. 11-2, at ECF 17:11–14.)

Petitioner's plea hearing was held on May 17, 2016.  (*Id.* at ECF 15.)  Given the seriousness of the charges and victim's injuries, as well as Petitioner's need for mental health treatment, Judge Cyrulnik offered to permit Petitioner to plead to a seven-year period of incarceration followed by

---

[4] Petitioner had a history of abuse, multiple foster care placements and special education, and had been placed in psychiatric hospitals four times prior to being charged.  (Psych. Exam. Report, Dkt. 11-2, at ECF 8–9, 11–12.)  Petitioner's medical history includes diagnoses of bipolar disorder, depression, anxiety, and epilepsy.  (*Id.* at ECF 9.)  At the time of the examination, Petitioner had prescriptions for an antipsychotic, an antidepressant, pain medication for his back and neck, and medication for epilepsy.  (*Id.* at ECF 9, 12.)  Petitioner's examiners also noted that at the time of their examination, Petitioner reported no longer feeling suicidal.  (*Id.* at ECF 12.)

five years of post-release supervision. (*Id.* at ECF 17:15–25.) Petitioner accepted Judge Cyrulnik's offer, pleading guilty to Assault in the First Degree pursuant to N.Y. Penal Law § 120.10[3], *i.e.*, "[u]nder circumstances evincing a depraved indifference to human life, . . . recklessly engag[ing] in conduct which creates a grave risk of death to another person, and thereby caus[ing] serious physical injury to another person." (*Id.* at ECF 22:23–23:2, 26:21–27:3.)

During the plea hearing, Judge Cyrulnik asked whether Petitioner understood the plea and had received enough time to speak with Attorney Pepe about it. (*Id.* at ECF 17:4–5, 21:12–18, 22:15–18, 22:23–23:10, 25:22–26:20 (explaining to Petitioner that he was waiving rights by pleading guilty, including the right to a jury, to question witnesses, and to not testify against himself).) Petitioner reported having enough time to speak with Attorney Pepe, who "explained everything to [him]." (*Id.* at ECF 21:12–18, 22:19–21, 25:12–21.) Petitioner also confirmed that no one had made promises concerning the case or threatened or forced him to plead guilty "at all," and that he was "[v]ery satisfied" with Attorney Pepe's representation in his case. (*Id.* at ECF 25:12–21.) Judge Cyrulnik also asked Petitioner about his medications for anxiety, depression, epilepsy, insomnia, and pain to ensure that Petitioner's decision making was not compromised. (*Id.* at ECF 19:23–20:11.) Petitioner said that his medications did not make him drowsy and that his neck and back pain was "not affecting [him]." (*Id.* at ECF 20:23–21:11.)

Finally, Attorney Pepe informed the court that he had explained to Petitioner the Waiver of Appeal that was part of the plea offer. (*Id.* at ECF 27:12–28:3 ("I have read it to him, he read it, . . . I have explained the wording to him and [], by my questioning him, he does understand what the waiver says, Your Honor, and he is executing that he does, in fact, understand it.").) Judge Cyrulnik also explained the waiver to Petitioner, stating that "[i]f there was a claim that the sentence of seven years was not legal, not allowed by law, you could still appeal that. But if you

then claimed that the seven years was too high, too much[,] of course that you could not appeal if I accept this waiver." (*Id.* at ECF 28:4–29:2.)  The judge then asked Petitioner if he understood, to which Petitioner responded, "I understand." (*Id*. at ECF 29:3–4.)  Judge Cyrulnik accepted Petitioner's Waiver of Appeal, finding that Petitioner gave it "knowingly, intelligently and voluntarily." (*Id.* at ECF 30:13–16.)

Petitioner's sentencing hearing was held on June 1, 2016.  (Petitioner's Sentencing Transcript ("Sentencing Tr."), Dkt. 11-2, at ECF 37.)  The court sentenced Petitioner to the agreed-upon term of seven years of incarceration, followed by five years of post-release supervision.[5] (*Id.* at ECF 42:21–23.)

IV.     **Procedural History**

A.      **State Court Post-Trial Applications**

Petitioner filed a notice of appeal on October 28, 2016.  (Pet. Br. App. Div., Dkt. 11-3, at ECF 5.)  The Appellate Division for the Second Department granted Petitioner leave to appeal as a poor person and assigned him appellate counsel.  (*Id.*)  In October 2017, Petitioner's appellate counsel, Attorney Yvonne Shivers, submitted an *Anders* brief to seek permission from the court to withdraw from representing Petitioner because he had no nonfrivolous claims.  (*Id.* at ECF 2, 12–16 (explaining that Petitioner had no claims of merit on appeal because his guilty plea was knowing, intelligent, and voluntarily given, and because his right to appeal was validly waived with his guilty plea).)

---

[5] The court also entered three orders of protection, each eight years in duration, after Petitioner completed his term of incarceration and post-release supervision, subject to the Family Court's further determinations as to permitting Petitioner's visitation with the subjects of the orders.  (Sentencing Tr., Dkt. 11-2, at ECF 42:6–12, 43:7–11.)  The orders of protection are not at issue in this habeas application.

On May 8, 2018, Petitioner filed a pro se supplemental brief in the Appellate Division, arguing that he was denied effective assistance of counsel and that his plea was invalid because it was not voluntary, knowing, and intelligent. (Pet. Suppl. Br. App. Div., Dkt. 11-3, at ECF 30, 33, 34, 40.) Petitioner alleged ineffective assistance of counsel on the bases that Attorney Pepe denied him access to grand jury proceedings, failed to secure a better plea deal, failed to adequately explain the charges to which Petitioner was pleading guilty and the meaning of the Waiver of Appeal, and failed to explain the meaning of depraved indifference. (*Id.* at ECF 33, 36.) Petitioner further claimed that his indictment was invalid because the People failed to properly serve him notice to testify before the grand jury pursuant to New York Criminal Procedure Law § 190.50(5)(a). (*Id.* at ECF 37.)

The Appellate Division for the Second Department affirmed Petitioner's conviction, finding that he had no nonfrivolous claims, and the New York Court of Appeals declined to review. *See People v. Teaque*, 94 N.Y.S.3d 875 (App. Div. 2019), *appeal denied*, 33 N.Y.3d 1074 (2019).

While his direct appeal was proceeding, Petitioner moved on July 19, 2018 to vacate his conviction under New York Criminal Procedure Law § 440.10 ("440.10 Motion"), arguing that he was not guilty of Assault in the First Degree (N.Y. Penal Law § 120.10[3]) because he did not evince a depraved indifference to human life; did not recklessly engage in conduct creating a grave risk of death; did not intend to cause physical injury to another; and that his intent was negated by his diminished mental state due to his mental health diagnosis, treatment, and medications.[6]

---

[6] Petitioner argued that Assault in the Third Degree under N.Y. Penal Law § 120.00 was more appropriate in his case because he acted merely recklessly with criminal negligence. (Pet. 440.10 Mot., Dkt. 11-3, at ECF 76.) Petitioner further claimed there was no intent because he lost consciousness during the event. (*Id.* at ECF 77 ("This was not a Planned or Intentional Act, But a[n] Emotional Response to a Man under Psychiatric Care and, Anti-Psychotic and mood-Stabilization medications, Defendant had an Emotional Breakdown.").)

(Petitioner's Motion to Vacate Judgment Under § 440.10 ("Pet. 440.10 Mot."), Dkt. 11-3, at ECF 72–73, 76.) Petitioner also alleged ineffective assistance of counsel on similar grounds to his direct appeal. (*Id.* at 78.)

The court denied Petitioner's 440.10 Motion without a hearing on March 18, 2019. (State Court Order on 440.10 Mot., Dkt. 11-3, at ECF 117–20.) On December 26, 2019, Petitioner filed a motion requesting a certificate to appeal the order denying his 440.10 Motion. (Petitioner's Application to the Appellate Division for Leave to Appeal the Denial of his 440.10 Motion ("Pet. 12/26/19 Appl."), Dkt. 11-4, at ECF 13.) That motion for leave to appeal was denied without a hearing on February 10, 2020. (Petitioner's Habeas Petition ("Pet.") Dkt. 1, at ECF 4.)

### B. Instant Habeas Petition

Petitioner filed the instant habeas petition on February 26, 2020. (*See generally id.*) He asked the Court to appoint him counsel, which the Court denied on April 28, 2020, because it could not find that Petitioner's position was "of substance." (4/28/2020 Docket Order.) The Court denied two more of Petitioner's requests for counsel because there had been no factual development since the first denial. (5/12/2020, 5/21/2020 Docket Orders.) Respondent filed a response in opposition to Petitioner's application on June 29, 2020. (Dkt. 11.) Petitioner filed a reply brief on September 23, 2020. (Petitioner's Reply Brief ("Pet. Reply Br."), Dkt. 15.)

## LEGAL STANDARD

28 U.S.C. § 2254 provides that a habeas corpus application must be denied unless the state court's adjudication on the merits (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). "A state court adjudicates a petitioner's federal constitutional claims on the

merits when it (1) disposes of the claim on the merits, and (2) reduces its disposition to judgment." *Norde v. Keane*, 294 F.3d 401, 410 (2d Cir. 2002) (citation and quotation marks omitted).

"Clearly established federal law refers to the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state-court decision." *Howard v. Walker*, 406 F.3d 114, 122 (2d Cir. 2005) (citation and quotation marks omitted). A decision is "contrary to" established federal law if it either "applies a rule that contradicts the governing law set forth in" Supreme Court cases, or "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (citation omitted).

A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.* (citation omitted). The Antiterrorism and Effective Death Penalty Act ("AEDPA") establishes a deferential standard of review: "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Gilchrist v. O'Keefe*, 260 F.3d 87, 93 (2d Cir. 2001) (quoting *Williams v. Taylor*, 529 U.S. 362, 411 (2000)). Courts must "assess whether the state court's decision was 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Garner v. Lee*, 908 F.3d 845, 861 n.14 (2d Cir. 2018) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). Finally, "if the federal claim was not adjudicated on the merits, 'AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed

*de novo*.'" *Dolphy v. Mantello*, 552 F.3d 236, 238 (2d Cir. 2009) (quoting *Spears v. Greiner,* 459 F.3d 200, 203 (2d Cir. 2006)).

Federal habeas review is further limited when the challenged conviction is based on a guilty plea. "[W]hen a criminal defendant enters a guilty plea, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Blackledge v. Perry*, 417 U.S. 21, 29–30 (1974) (citation and quotation marks omitted); *accord United States v. Coffin*, 76 F.3d 494, 497 (2d Cir. 1996). Rather, "a person complaining of such antecedent constitutional violations is limited in a federal habeas corpus proceeding to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." *Blackledge*, 417 U.S. at 30 (internal citations and quotation marks omitted). With respect to a claim of ineffective assistance of counsel, a guilty plea waives only such claims "relating to events prior to the guilty plea that did not affect the voluntariness of [the petitioner's] plea." *Vasquez v. Parrott*, 397 F. Supp.2d 452, 463 (S.D.N.Y. 2005) (collecting cases).

## DISCUSSION

Petitioner makes four claims in his application: (1) that he was denied effective assistance of counsel (Pet., Dkt. 1. at ECF 5); (2) that his psychiatric history and use of psychotropic medications made him mentally unfit to voluntarily accept a plea and waive his right to appeal (*id.* at ECF 6); (3) that his sentence as a first-felony offender is harsh and excessive (*id.* at ECF 8); and (4) that he was under extreme mental anguish during his plea and sentencing proceedings such that he was not mentally fit to understand the proceedings and accept the plea deal (*id.* at ECF 9). This Court construes Petitioner's second and fourth grounds for relief, respectively, as a claim that Petitioner was not competent to plead guilty and waive his right to appeal and a claim that his plea and Waiver of Appeal were not given knowingly, intelligently, and voluntarily.

Respondent argues that (1) Petitioner was competent and his guilty plea and Waiver of Appeal were knowing, intelligent, and voluntary (Resp. Mem., Dkt. 11, at ECF 14); (2) Petitioner's claim for ineffective assistance of counsel is not cognizable, was waived, and is meritless (*id.* at ECF 23); and (3) Petitioner's claim that his sentence is harsh and excessive is not cognizable (*id.* at ECF 29). For the reasons below, the Court denies Petitioner's claims for habeas relief.

## I. Petitioner's Guilty Plea and Waiver of Appeal Are Enforceable

Petitioner argues that he was unable "to voluntarily accept a plea and waive [his] right to appeal" due to extreme duress, mental anguish, and his history of mental health problems and medications. (Pet., Dkt. 1, at ECF 6.) He contends that his extreme mental anguish, mental health problems, and medications "cast serious doubts that [he] understood the criminal justice procedures" and "the implications of his sentence." (*Id.* at ECF 9.) Because the state court adjudicated these claims on the merits as part of Petitioner's pro se supplemental appeal and his 440 Motion—*Teaque*, 94 N.Y.S.3d 875; (State Court Order on 440.10 Mot., Dkt. 11-3, at ECF 114–20)—"[t]he question is . . . whether that determination was unreasonable," *Rosario v. Ercole*, 601 F.3d 118, 123 (2d Cir. 2010) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 113 (2009)).

### A. Petitioner Knowingly, Intelligently, and Voluntarily Pled Guilty and Waived His Right to Appeal

"[U]nder the Due Process Clause of the United States Constitution, a trial court can only accept a guilty plea which is 'done voluntarily, knowingly, and intelligently, with sufficient awareness of relevant circumstances and likely consequences.'" *Velasquez v. Ercole*, 878 F. Supp. 2d 387, 401 (E.D.N.Y. 2012) (quoting *United States v. Adams*, 448 F.3d 492, 497 (2d Cir.2006)). "A plea is considered intelligent if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way, and it is considered voluntary if it is not the product of actual or threatened physical harm, mental coercion overbearing the

defendant's will, or the defendant's sheer inability to weigh his options rationally." *Id.* (citation and quotation marks omitted). A valid guilty plea must "represent[] a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Id.* (quoting *Hill v. Lockhart*, 474 U.S. 52, 56 (1985)). "[T]he 'state court's determination of the voluntariness of a defendant's guilty plea is a factual issue that is entitled to a presumption of correctness on habeas review.'" *Persaud v. Kirkpatrick*, No. 15-CV-5645 (JMA), 2019 WL 2743588, at *6 (E.D.N.Y. July 1, 2019) (quoting *Murray v. McGinnis*, No. 00-CV-3510, 2001 WL 26213, at *4 (S.D.N.Y. Jan. 10, 2001)).

Similarly, "a waiver of the right to appeal is enforceable where the defendant's waiver was knowing and voluntary." *Adu v. United States*, 374 F. Supp. 2d 311, 312 (E.D.N.Y. 2005) (citing, *inter alia*, *United States v. Morgan*, 386 F.3d 376, 382 (2d Cir. 2004)). A waiver of appeal is knowing and voluntary when the petitioner "understands the right to appeal and the potential consequences of waiving that right." *Adu*, 374 F. Supp. 2d at 312–13; *see also Morgan*, 386 F.3d at 379 (holding that a waiver of appeal was enforceable because there was no realistic possibility that the defendant misunderstood the waiver after the judge explained in the plea colloquy that the defendant "[would] have no right to take an appeal from any aspect of this case").

The state court reasonably determined that Petitioner gave his plea "voluntarily, knowingly, and intelligently," and "with sufficient awareness of relevant circumstances and likely consequences.'" *See Velasquez*, 878 F. Supp. 2d at 401 (quoting *Adams*, 448 F.3d at 497). Petitioner affirmed during the plea colloquy that nobody had made him any promises concerning his plea, threatened him, or forced him to plead guilty. (Plea Tr., Dkt. 11-2, at ECF 25:12–21.) His counsel and the state court advised him of the consequences of the plea deal. (*Id.* at ECF 22:15–23:10.) Petitioner said he understood that he was "giv[ing] up some very important rights"

by pleading guilty. (*Id.* at ECF 25:22–26:20.) And Petitioner affirmed his guilty plea after the state court recited the elements of the crime. (*Id.* at ECF 26:21–27:8.)

Similarly, the state court reasonably determined that Petitioner waived his right to appeal knowingly, intelligently, and voluntarily. *See Adu*, 374 F. Supp. 2d at 312 (citing, *inter alia*, *Morgan*, 386 F.3d at 382). The court and Petitioner's attorney advised him about the Waiver of Appeal, he said he understood what he signed, and he told the judge that he had not been threatened or forced to sign it. (*Id.* at ECF 27:16-30:16.)

In sum, the state court repeatedly confirmed Petitioner's knowing, intelligent, and voluntary waiver of his right to trial and appeal, and his desire to plead guilty. Petitioner therefore has not shown that the state court contradicted federal law or applied federal law unreasonably by finding that Petitioner's guilty plea was knowing, intelligent, and voluntary.

### B. Petitioner's History of Mental Health Problems and Use of Psychotropic Medications Do Not Undermine the Validity of His Plea

Petitioner argues that his history of mental health problems, learning disability, diagnosis of attention deficit with hyperactivity disorder, and prescription psychotropic medications placed him under extreme duress and mental anguish, such that he "was not mentally fit to voluntarily accept a plea and waive [his] right to appeal," and did not understand the criminal justice procedures or the implications of his sentence. (Pet., Dkt. 1, at ECF 6, 9.) As previously noted, the Court construes this argument as a claim that Petitioner was not competent to plead guilty or waive his right to appeal.

Due Process requires that a criminal defendant be competent to stand trial and that a plea of guilty be given "competently." *Godinez v. Moran*, 509 U.S. 389, 396 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 468 (1938)). To stand trial and to plead guilty, the defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational

understanding" and "a rational as well as factual understanding of the proceedings against him." *Id.* (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)).

"A state court's finding of competency is an issue of fact which is entitled to a presumption of correctness on *habeas* review, requiring clear and convincing evidence to overturn." *Rodriguez v. Lamanna*, No. 18-CV-7196 (ENV), 2020 WL 4926358, at *3 (E.D.N.Y. Aug. 19, 2020) (citations omitted). Habeas relief is warranted only where the state court's competency determination was an objectively unreasonable application of federal law. *See Smith v. Rock*, 554 F. Supp. 2d 505, 511 (S.D.N.Y. 2008).

Petitioner contends that his circumstances warranted a competency examination before his plea based on his extensive psychiatric history, his use of psychotropic medications, and statements he made pre-trial that suggested that he was confused. But on April 25, 2016, just a few weeks before pleading guilty on May 17, 2016, Petitioner did undergo a psychiatric examination that found him fit to stand trial, and there is nothing in the record indicating that the state court needed to order another examination immediately before Petitioner's guilty plea. (*See* Psych. Exam. Report, Dkt. 11-2, at ECF 8.) Drs. Rubel and Francois determined that Petitioner adequately understood the proceedings against him and could participate in his defense. (*Id.* at ECF 7, 10, 12–13.) Although Drs. Rubel and Francois noted the "risk" that Petitioner would "becom[e] unfit" if his "symptoms of depression and anxiety should worsen" (*id.* at ECF 10; *see also id.* at ECF 13), there is no evidence that that ever occurred (much less in the three weeks between Petitioner's evaluation and his guilty plea), such that another competency evaluation was warranted. *See, e.g.*, *United States v. Del Carpio*, 63 F. App'x 539, 540–41 (2d Cir. 2003) (summary order) (affirming the district court's decision not to conduct a competency hearing before the defendant pled guilty,

because the defendant had undergone a psychiatric examination months before, and the record did not show any subsequent loss of competence).

Petitioner cites instances from his plea hearing[7] and sentencing hearing[8] that he contends demonstrate he did not understand the proceedings, his charges, or the sentence to which he was pleading guilty. (*Id.* at ECF 37–39.) But these instances do not provide clear and convincing evidence that Petitioner had become incompetent. *See Royster v. Perez*, No. 08-CV-131 (ARR), 2009 WL 1505278, at *4 (E.D.N.Y. May 28, 2009) ("[T]he state court's factual determination that the petitioner's plea was voluntary is presumed to be correct absent clear and convincing [evidence] to the contrary." (citing 28 U.S.C. § 2254(e)(1))); *see also Stokes v. Powers*, No. 04-CV-758, 2008 WL 1991081, at *8 (N.D.N.Y. May 5, 2008) ("On habeas review, a state court's competency determination is entitled to a presumption of correctness." (citations omitted)). The state court asked Petitioner about his medications and mental state, and he responded that his medications did not make him drowsy and that his neck and back pain was "not affecting [him]." (Plea Tr., Dkt. 11-2, at ECF 20:23-21:11.) The state court thus reasonably found Petitioner competent to plead guilty and waive his right to appeal, and that another competency hearing was not required. *See, e.g.*, *United States v. Nichols*, 56 F.3d 403, 414 (2d Cir. 1995) ("In deciding that an evidentiary hearing is unnecessary, a court may rely not only on psychiatrists' reports indicating

---

[7] Petitioner argues that there was evidence of his confusion during the plea hearing because he twice asked if he could make a statement, the court suggested he speak with Attorney Pepe first, and after that occurred, Attorney Pepe stated that Petitioner did not wish to make a statement. (Pet. Reply Br., Dkt. 15, at ECF 8; Plea Tr., Dkt. 11-2, at ECF 21:17–22:8, 34:3–13 (the second time the court clarified that Petitioner said something that "relate[d] more to a presentence").)

[8] Petitioner argues that his request to the court "that in the future that [he] could get an opportunity to be a good father to [his] son" indicates that he did not understand his charges or the sentence to which he was pleading guilty during his sentencing hearing. (Pet. Reply Br., Dkt. 15, at ECF 8; Sentencing Tr., Dkt. 11-2, at ECF 41:21–42:4.)

competency but also on its own observations of the defendant." (citation omitted)); *Thomas v. Att'y Gen. of State of N.Y.*, 133 F.3d 907, at *3 n.2 (2d Cir. 1998) (Table) (noting, in rejecting a habeas appeal based on incompetence to plead guilty, that there was "no serious indication that the [petitioner's] medication rendered him incompetent, nor even sufficient suggestions of doubt on that score to require further examination with respect to this aspect of the case").

Thus, Petitioner has not shown that the state court contradicted federal law or applied federal law unreasonably by finding that Petitioner was competent to plead guilty and waive his right to appeal.

## II.    The Court Rejects Petitioner's Claim of Ineffective Assistance of Counsel

Petitioner argues that his trial counsel was ineffective because he allowed Petitioner to be "left out of all critical areas of the proceedings," including the grand jury proceedings, and did not pursue other courses of action such as a *Huntley* hearing and a motion to dismiss the indictment. (Pet., Dkt. 1, at ECF 5.)  He also alleges that Attorney Pepe failed to properly investigate his case and "use" his mental health history in his proceedings.  (Pet. Reply Br., Dkt. 15, at ECF 5.)  The Court rejects Petitioner's ineffective assistance of counsel claims both as waived and meritless.

### A.    Petitioner Waived his Claim of Ineffective Assistance of Counsel

"Generally, a petitioner who pleads guilty may not challenge his conviction on the basis that his constitutional rights were violated during a pre-plea hearing."  *Mapp v. Phillip*, No. 04-CV-1889 (JG), 2005 WL 1541044, at *5 (E.D.N.Y. June 29, 2005) (citing *Tollett v. Henderson*, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.")).  "[C]laims of ineffective assistance of counsel that 'involve counsel's pre-plea actions and do not affect the voluntariness of the plea itself,' are waived by a petitioner's subsequent

'voluntary, knowing and intelligent guilty plea.'" *Brown v. Lee*, No. 14-CV-5354 (SJF), 2017 WL 4233034, at *5 (E.D.N.Y. Sept. 25, 2017) (quoting *Beckary v. Chappius*, No. 11-CV-850, 2012 WL 3045691, at *10 (W.D.N.Y. July 25, 2012)). Similarly, a knowing, intelligent, and voluntary appeal waiver is enforceable on habeas review against claims of ineffective assistance of counsel unless the appeal waiver is the product of counsel's alleged ineffective assistance. *See Yushuvayev v. United States*, 532 F. Supp. 2d 455, 468–70 (E.D.N.Y. 2008) (discussing *United States v. Oladimeji*, 463 F.3d 152 (2d Cir. 2006)). By pleading guilty and waiving his right to appeal, Petitioner thus waived his claims of ineffective assistance of counsel, which are based on pre-plea events and actions.

## B. Petitioner's Claim of Ineffective Assistance of Counsel Is Meritless

To the extent that Petitioner has preserved any cognizable ineffective assistance claim, it is meritless. In *Strickland v. Washington*, 466 U.S. 668, 687 (1984), the Supreme Court set forth a two-part test for evaluating claims of ineffective assistance of counsel. "To warrant relief, a defendant must demonstrate both 'that counsel's performance was deficient' and 'that the deficient performance prejudiced the defense.'" *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017) (quoting *Strickland*, 466 U.S. at 687) (footnote omitted). "Under *Strickland*'s first prong, counsel's conduct falls to the level of being deficient if 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" *Eze v. Senkowski*, 321 F.3d 110, 125 (2d Cir. 2003) (quoting *Strickland*, 466 U.S. at 687). Under the second prong, counsel's conduct prejudiced the defense if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 123 (quoting *Strickland*, 466 U.S. at 688, 694). "To prevail [on an ineffective assistance claim], a defendant must establish both of *Strickland*'s prongs because, otherwise, 'it could not be said that the sentence or conviction resulted from a breakdown in the adversary process that

rendered the result of the process unreliable, and the sentence or conviction should stand.'" *Id.* (quoting *Bell v. Cone*, 535 U.S. 685, 695 (2002)).

In assessing an ineffective assistance claim in a habeas petition, "[t]he question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles*, 556 U.S. at 123 (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). "And, because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Id.* (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). A court's "scrutiny of counsel's performance must be 'highly deferential' because [the court] must apply 'a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Rivas v. Fischer*, 780 F.3d 529, 547 (2d Cir. 2015) (quoting *Strickland*, 466 U.S. at 689). Finally, a habeas petitioner "must 'affirmatively prove prejudice' by showing that the purported errors 'actually had an adverse effect on the defense.'" *Yannai v. United States*, 346 F. Supp. 3d 336, 342 (E.D.N.Y. 2018) (quoting *Strickland*, 466 U.S. at 693). "Speculative, conclusory, or self-serving allegations are insufficient." *Id.* (collecting cases).

There is no evidence in the record to support Petitioner's claim of ineffective representation by his trial counsel, *i.e.*, that Attorney Pepe's performance fell below *Strickland*'s "objective standard of reasonableness." *See* 466 U.S. at 687–88. Rather, the only evidence in the record points to the opposite conclusion. At his plea hearing, Petitioner reported that he had enough time to speak with Attorney Pepe, that his attorney had "explained everything," and that Petitioner was "[v]ery satisfied" with Attorney Pepe's representation in his case. (Plea Tr., Dkt. 11-2, at ECF 21:12–18, 22:19–21, 25:12–21.) As the state court found, "[Petitioner]'s claim that his trial

counsel was ineffective, in that counsel failed to advise him of the terms and significance of his plea and the Waiver of Appeal, is belied by the transcript of his plea." (State Court Order on 440.10 Mot., Dkt. 11-3, at ECF 115–16.) This determination was reasonable. *See* 28 U.S.C. § 2254(d). Petitioner also fails to show how his involvement in the grand jury proceedings, investigation by his counsel, or further use of his mental health history would have secured a more favorable plea deal or otherwise changed the outcome of his case.

In short, Petitioner has not overcome the "substantial deference" owed to the state court and "establish[ed] that the state court's decision on ineffective assistance was contrary to, or an unreasonable application of, *Strickland*" to warrant habeas relief. *See Rosario*, 601 F.3d at 123. The Court therefore denies habeas relief based on Petitioner's ineffective assistance of counsel claim.[9]

## III.    Petitioner's Excessive Sentence Claim is Not Cognizable

Petitioner's argument that his sentence as a first-felony offender was harsh and excessive is not cognizable on federal habeas review. (*See* Pet., Dkt. 1, at ECF 8.)

First, Petitioner waived his excessive sentence claim in his Waiver of Appeal. The state court explained to Petitioner, and Petitioner affirmed that he understood, that he was "giving up [his] right to appeal in exchange for the plea offer" and that he would not be able to "appeal to any court at any time for any reason," including "that the seven years was too high." (Plea Tr., Dkt. 11-2, at ECF 28:8–29:4.) Attorney Pepe also advised him of the Waiver of Appeal, and Petitioner affirmed that he understood. (*Id.* at ECF 29:14–30:7.) As discussed, Petitioner waived his right

---

[9] Further, Petitioner's claim of ineffective assistance of counsel related to his grand jury proceeding is not cognizable because "there is no federally-cognizable ineffective assistance claim concerning advice regarding the state grand jury process." *Payton v. Racette*, No. 11-CV-1260 (PKC), 2015 WL 9581877, at *8 (E.D.N.Y. Dec. 30, 2015).

to appeal "voluntarily, knowingly, and intelligently," and "with sufficient awareness of relevant circumstances and likely consequences.'" *Velasquez*, 878 F. Supp. 2d at 401 (quoting *Adams*, 448 F.3d at 497).

Second, Petitioner's sentence is within the statutory range. "It is well-settled in the Second Circuit that '[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law.'" *Carpenter v. Conway*, No. 07-CV-3602 (JS), 2011 WL 795860, at *8 (E.D.N.Y. Feb. 25, 2011) (alterations in original) (quoting *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir.1992)); *see also Cardova v. Lavalley*, 123 F. Supp. 3d 387, 398 (E.D.N.Y. 2015) ("[A]n excessive sentence claim may not be raised as grounds for habeas corpus relief if the sentence is within the range prescribed by state law." (quoting *Williams v. Lavalley*, 12-CV-1141, 2014 WL 1572890, at *5 (N.D.N.Y. Apr. 17, 2014))).

Petitioner pled guilty to first-degree assault pursuant to N.Y. Penal Law § 120.10[3], a class B felony for which the sentence "must be at least five years and must not exceed twenty-five years." N.Y. Penal Law §§ 70.02(1)(a), (3)(a). Petitioner was sentenced to seven years' imprisonment. Because the sentence Petitioner received is within the range prescribed by state law, he is not entitled to habeas relief on the ground that his sentence is excessive. Accordingly, the Court denies, as non-cognizable, Petitioner's excessive sentence claim.

## CONCLUSION

For these reasons, Petitioner's petition for a writ of habeas corpus is denied. A certificate of appealability shall not issue because the Court does not find that reasonable jurists could debate that the petition "should have been resolved in a different manner" or that it presents issues "adequate to deserve encouragement to proceed further." *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)); *see also* 28 U.S.C. § 2253(c).

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of any appeal.  *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).  The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: June 2, 2021
      Brooklyn, New York